Case 4:99-cv-90500-RP   Document 21   Filed 10/20/99   Page 1 of 7

FILED
DES MOINES, IOWA
99 OCT 20 PM 1: 26
CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| PHILIP L. HIRSCHHORN and, ELIZABETH HIRSCHHORN, | 4-99-CV-90500 |
| Plaintiffs, | |
| vs. | |
| CURTIS H. MCDONALD, | ORDER ON DEFENDANT'S MOTION TO DISMISS |
| Defendant. | |

Before the Court is Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) filed September 15, 1999. Plaintiff resisted and Defendant filed a timely reply. Briefs were submitted and oral argument was held on October 20, 1999. The matter is submitted.

**I. Background**

The present motion seeks to dismiss a declaratory judgment action filed in this Court by Philip and Elizabeth Hirschhorn ("the Hirschhorns") on September 3, 1999 seeking a declaration that the Hirschhorns have not acted in violation of Rule 10(b)-5 of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), 17 C.F.R. § 240.10b-5, or Iowa corporation law, Iowa Code §490.1430.

The parties formed Prime Sites, Inc. (PSI) in April of 1998 to make money in the real estate development market. When McDonald joined PSI, he contributed a sizeable parcel of land to the business as security for future commercial loans. In addition to the land, McDonald also

contributed his expertise to PSI, for which he received, among other things, a 45 percent share in the company. The company carried on with moderate success in the ensuing months. Relations between McDonald and the Hirschhorns soured, however, when attempts to solicit investors were unsuccessful. Discord among the parties seemed to peak when PSI, apparently on the Hirschhorns' recommendation, could not secure a much-needed loan from a Tennessee financier (Wendell Clemons) even though PSI had paid Clemons $185,000 in application fees. Meanwhile, PSI's financial obligations were mounting. The situation apparently deteriorated when McDonald learned that the Hirschhorns were pressing for a merger of PSI with an entity that Clemons wanted to form. Soon thereafter, McDonald threatened to move to dissolve PSI, set aside the transaction involving his land conveyance to PSI, and order restitution to PSI in the amount of $185,000 by the Hirschhorns. This threat was embodied in a draft petition appended to a short letter from McDonald's attorney to counsel for PSI. The letter stated that a "Petition for the dissolution of Prime Sites, Inc." would be filed on September 1, 1999.

Soon after receiving this letter from McDonald's attorney threatening to dissolve PSI, the Hirschhorns filed suit, pursuant to 28 U.S.C. §§ 1331, 2201, 2202, and 1367, seeking a declaration that their prior commercial dealings did not violate Rule 10(b)-5 of the Securities Exchange Act of 1934 or Iowa corporation law. McDonald filed the present Motion to Dismiss on grounds that this Court lacks subject matter jurisdiction over the Hirschhorns' declaratory judgment action. For the reasons explained below, the Court grants McDonald's Motion to Dismiss.

## II. Analysis

By statute, Section 1331 operates as the "gatekeeper" of the federal courthouse. Specifically, "the district courts shall have original jurisdiction of all civil actions arising under

the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. This statute has been narrowly construed by the courts: It is not enough that a case merely "arise under" federal aw (which is all that Article III, § 2 of the Constitution requires).

Rather, for jurisdiction under § 1331, there must be a "substantial" question of federal law involved, *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667 (1950), and it must appear in a "well-pleaded complaint," *Taylor v. Anderson*, 234 U.S. 74, 75, 34 S.Ct. 724 (1914). In this regard, Justice Frankfurter's opinion in *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667 (1950), expressed well the nature of federal question jurisdiction. In assessing the propriety of a federal court maintaining a federal declaratory action involving provisions of a contract claim, Frankfurter noted:

> Not every question of federal law emerging in a suit is proof that a federal law is the basis of the suit. *Gully v. First National Bank in Meridian*, 299 U.S. 109, 115; ... [I]t has been settled doctrine that where a suit is brought in the federal courts 'upon the sole ground that the determination of the suit depends upon some question of a Federal nature, it must appear, at the outset, from the declaration or the bill of the party suing, that the suit is of that character.' But a suggestion of one party that the other will or may set up a claim under the Constitution or laws of the United States does not make the suit one arising under that Constitution or those law.' *Tennessee v. Union & Planters' Bank*, 152 U.S. 454, 464. The plaintiff's claim itself must present a federal question 'unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose.' Taylor v. Anderson, 234 U.S. 74, 75-76; *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152.

Skelly Oil, 339 U.S. at 672. (emphasis added).

The Hirschhorns cast the nature of McDonald's threat as one sounding in federal securities law in the first instance. The facts and conduct of the parties suggest otherwise. For instance, by its own terms, McDonald's demand letter stated that the appended Draft Petition was "for the dissolution of the Prime Sites, Inc." The letter does not threaten federal securities law, as was the case in *Kidder, Peabody & Co., Inc. v. Maxis Energy Corp.*, 925 F.2d 556 (2d

Cir. 1991), or threaten to pursue "full legal remedies," as in *Cardtoons v. Major League Baseball Players Association*, 95 F.3d 959, 966 (10th Cir. 1996). The conduct of the parties, especially that of McDonald, suggests that the threat was not a federal one but a garden variety corporate dissolution. Absent then some independent basis of federal question jurisdiction, *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27-28, 103 S.Ct. 2841, 2855-56 (1983), it necessarily follows that this Court cannot, consistent with the Declaratory Judgment Act, issue declaratory relief because there is no "actual controversy *within its jurisdiction*." 28 U.S.C. § 2201. (emphasis added).

The Hirschhorns cite to *Cardtoons* for the proposition that the essential inquiry is whether the McDonald's potential state-law suit "could" contain a federal claim. 95 F.3d at 966. If a federal claim could be made out then federal jurisdiction would attach. *Id.* at 965. The Hirschhorns assert that the Draft Petition's allegations of conduct which warrant dissolution of PSI also potentially fit the elements of a Rule 10(b)-5 violation.[1] Thus, under *Cardtoons*, the Hirschhorns argue there is federal question jurisdiction because McDonald could have plead a valid federal claim.

The Tenth Circuit's statement of the law in *Cardtoons* is questionable[2] and given the

---

[1] Standing under § 10(b) and Rule 10b-5 requires a showing of (1) misrepresentations or omissions of material fact or acts that operated as a fraud or deceit; (2) causation, often analyzed in terms of materiality and reliance; (3) damages; and (4) fraudulent activity occurring in connection with the purchase and sale of a security. §17 C.F.R. 240.10b- 5; *Alpern v. Utilicorp United, Inc.*, 84 F.3d 1525, 1533-34 (8th Cir. 1996).

[2] *Cardtoons*, 95 F.3d at 964, states that "federal question jurisdiction exists in a declaratory judgment action if the potential suit by the declaratory judgment defendant would arise under federal law," and for authority cites to dicta in footnote 19 of *Franchise Tax Board*. That footnote observed that federal courts consistently have held that federal jurisdiction exists over declaratory judgment actions brought to secure a declaration of patent invalidity. *Franchise Tax Board*, 463 U.S. at 20 n. 19. It may be recalled that Congress vested *exclusive* jurisdiction with the federal courts over claims related to patents. *See* 28 U.S.C. 1338(a). Thus, footnote 19 reflects the federal judiciary's traditional protective dominion over patent claims. The dispute at issue in *Cardtoons* involved a potential trademark claim under the Lanham Act. Those are disputes over which Congress vested federal courts with *concurrent* jurisdiction. In other words, the concerns underlying the Court's observations in footnote 19--

overriding notion that federal courts are courts of limited jurisdiction, this Court is reluctant to follow *Cardtoons*. Even if the Court were to adopt *Cardtoons'* broad reading of federal question jurisdiction, then in cases like this, nearly every threat to dissolve a corporation under Iowa Code § 440.1430 could be bootstrapped into a federal securities claim.[3] *Cf. Hunter v. United Van Lines*, 746 F.2d 635, 645 (9th Cir. 1984) ("Countless (state law) claims can be said to depend in some way on federal propositions, yet not all such cases 'arise under' federal law.").

The Supreme Court squarely addressed this concern in *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 97 S.Ct. 1292 (1977), though in a slightly different corporate context. In *Santa Fe*, minority shareholders responded to a motion to dismiss on the pleadings by asserting, among other things, that a Rule 10(b)-5 securities claim inhered in the allegedly gross undervaluation of their minority shares. *Id.* at 463. The Supreme Court rejected this expansive reading of federal securities law.

> The reasoning behind a holding that the complaint in this case alleged fraud under Rule 10b-5 could not be easily contained. It is difficult to imagine how a court could distinguish, for purposes of Rule 10b-5 fraud, between a majority stockholder's use of a short-form merger to eliminate the minority at an unfair price and the use of some other device, such as a long- form merger, tender offer, or liquidation, to achieve the same result; or indeed how a court could distinguish the alleged abuses in these going private transactions from other types of fiduciary self-dealing involving transactions in securities. The result would be to bring within the Rule a wide variety of corporate conduct traditionally left to state regulation. In addition to posing a 'danger of vexatious litigation which could result from a widely expanded class of plaintiffs under Rule 10b- 5,' *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S., at 740, 95 S.Ct., at 1927, this

---

ensuring an Article III forum for patent claims--are not present in Lanham Act disputes which can be litigated in state court in the first instance. *See* 28 U.S.C. § 1338(a); *Aquatherm Indus., Inc. v. Florida Power & Light Co.*, 84 F.3d 1388 (11th Cir. 1996).

[3] Section 490.1430 of the Iowa Code states the various grounds for judicial dissolution of a corporation. A shareholder may dissolve a corporation if he or she can prove, *inter alia*, that the "directors or those in control of the corporation have acted, are acting, or will act in a manner that is illegal, oppressive, or fraudulent," §490.1430(2)(b),or if the "corporate assets are being misapplied or wasted," § 490.1430(2)(d).

> extension of the federal securities laws would overlap and quite possibly interfere with state corporate law. Federal courts applying a 'federal fiduciary principle' under Rule 10b-5 could be expected to depart from state fiduciary standards at least to the extent necessary to ensure uniformity within the federal system. Absent a clear indication of congressional intent, we are reluctant to federalize the substantial portion of the law of corporations that deals with transactions in securities, particularly where established state policies of corporate regulation would be overridden. As the Court stated in *Cort v. Ash, supra*: 'Corporations are creatures of state law, and investors commit their funds to corporate directors on the understanding that, except where federal law expressly requires certain responsibilities of directors with respect to stockholders, state law will govern the internal affairs of the corporation.' 422 U.S., at 84, 95 S.Ct., at 2091 (emphasis added).

Id. at 478-79.

The concerns expressed in *Santa Fe* also apply with equal force in this case. A federal court should not, as the Hirschhorns suggest, have to go looking for the federal claim, or infer its presence from the state claim, especially when the underlying dispute involves a question of corporate law. Original federal jurisdiction is available if "some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims, or that one or the other claims is 'really' one of federal law." *Franchise Tax Board*, 463 U.S. at 13; *North American Pillips Corp. v. Emery Air Freight Corp.*, 579 F.2d 229, 233-34 (2d Cir. 1979) (federal question jurisdiction attaches as long as the nature of the federal right is "clearly" set forth). McDonald's desire to judicially dissolve PSI, rescind a prior land conveyance, and seek restitution of a prior loan fee do not amount to a substantial federal question, or a claim that is "really" about federal law.

### III. Conclusion

For the foregoing reasons, the Court is without jurisdiction to issue declaratory relief. Accordingly, Defendant's Motion to Dismiss is **granted**.

IT IS SO ORDERED.

Dated this _20th_ day of October, 1999.

*Robert W. Pratt*
ROBERT W. PRATT
U.S. DISTRICT COURT